## Hartman's Appeal.

There are but two cases in which a review of an account settled and confirmed in the Orphans' Court, can be claimed as a matter of *right*: 1. For error of law, apparent on the face of the record: 2. For new matter which has arisen since the decree.

As a matter of *grace*, a review may be granted for new proof which has come to light since the decree was passed, and which could not have been used at the original hearing of the cause.

APPEAL from the Orphans' Court of *Allegheny county*.

This was an appeal by Mary Hartman, administratrix of Conrad Hartman, deceased, from the decree of the court below, dismissing her petition for a review of a former decree of the said court upon her administration account. The facts of the case are fully stated in the following opinion, delivered in the court below by MAYNARD, J.:—

"In the case of Bishop's Estate, 10 *Barr* 469, Justice COULTER, in delivering the opinion of the court, says:—'The Act of 1840 is plenary; and is peremptory on the court to grant a bill of review, upon the application of an executor or administrator, alleging error in the account, or any person interested, supported and sustained by the oath of the applicant, at any time within five years after final confirmation of the account; provided the balance so decreed shall not have been actually paid by the executor or administrator. This is the only exception, and would seem to be the only matter upon which the discretion or judgment of the court can find excuse or justification, in refusing to grant the review.' The learned judge proceeds further to say, 'The mistakes alleged are apparent upon the face of the account.'

"In the case of George's Appeal, 2 *Jones* 260, which was a petition for bill of review in the Orphans' Court, Justice BELL, by whom the opinion of the court was delivered, commences thus: '*It is conceded all round*, that in adjudicating the real estate late of Hugh McKean, the Orphans' Court has been led into an error by the mistake of the original petition, in stating the interest of James Hartford as alienee of Robert McKean, and to whom the land was adjudged at the appraised value. Through this error he has received a larger share of the estate than the conveyance under which he claims entitles him to. The object of the petition for review is to redress this wrong, by rectifying the error,' &c.

"The learned judge then proceeds to say:—'It must be admitted that a Court of Chancery would not, in a case like this, entertain a bill of review; for here is neither suggestion of new

[Hartman's Appeal.]

matter, discovered since the decree published; nor the averment of error apparent upon its face, one of which is said to be necessary to found such a prayer.'

"It would seem, in the case of George's Appeal, that although 'it was conceded all round, that the court had been led into error by the mistake in the original petition,' and that too in reference to the title for the land (which is presumed to have been of record), that this error or mistake was insufficiently averred in the petition for review; for if the error had been sufficiently averred, the record afforded all the evidence necessary for a Court of Chancery, according to the admitted rules of practice, to have entertained a bill of review.

"The learned judge further observes: 'I see no objection to the liberal exercise of the right to rehear and redress for the correction of manifest mistake, involving injury, tempered, however, by the application of a sound discretion, seeking to protect the rights of third persons; and which, in most cases, would dictate a refusal to interfere, where the relative position of the original parties was materially changed, or the interest of third persons might be put to hazard. In estimating such a contingency, the time which had elapsed since the decree complained of would, of course, enter largely into the consideration of the court; and, when this was much extended, might, of itself, afford a sufficient objection to bar the prayer for relief.'

"The 1st section of the Act of 13th October 1840, which authorizes a bill of review in cases of this kind, provides that upon petition of review being presented by executor, administrator, or guardian, or their legal representatives, or any person interested therein, within five years after the final decree, &c., alleging error in such account, which error shall be specifically set forth in said petition of review, and said petition and errors being verified by oath or affirmation, said Orphans' Court shall grant a rehearing of so much of said account as is alleged to be error in said petition of review, and give such relief as equity and justice may require, by reference to auditors or otherwise (except in cases where the balance found due shall have been actually paid or discharged).

"In the case of Bishop's Appeal, Judge COULTER gave this act a literal, strict, and stringent construction, considering the act peremptory on the court, to grant the bill of review, without the exercise of judicial discretion.

"We think the decision in that case went too far; of course it was harmless in that case, because 'the mistakes and errors in the case were apparent on the face of the account.' But we cannot believe it furnishes the rule in a case like the present; or that the Act of Assembly should be confined to the construction there

[Hartman's Appeal.]

given; as it is made the duty of the court by the same act, 'to give such relief as equity and justice may require, by reference to auditors or otherwise.' This duty necessarily brings the whole case before the court, as the petition for the bill of review must necessarily bring the whole record before the court. What then? Why, the court are required and enjoined by the act 'to give such relief as equity and justice may require.' Suppose the court are fully of the opinion, with the whole case thus before them, that equity and justice require that the prayer of the petition should not be granted; but that the same should be dismissed? Does the act require that the prayer shall first be granted and then dismissed? This will hardly be contended. But it may be said, the court should grant a rehearing, and refer the same to auditors. The court may be satisfied that justice does not require it; and should an auditor report an account that the court could not approve, would it not be the duty of the court to set it aside?

" There had been considerable diversity in the practice, in reference to granting a bill of review in equity cases, in Pennsylvania, until the decision of our Supreme Court in the case of Riddle's Estate, 7 *Harris* 433. In that case, the court adopted the long-tried and well-settled rules in chancery applicable to such cases. Justice LEWIS, in delivering the opinion of the court, says: 'A bill of review, according to the first of the ordinances of Lord Chancellor BACON respecting bills of that kind, can be brought only in two cases: the first is for error in law, appearing in the body of the decree, without further examination of matters of fact; and the second is for new matter, which hath arisen after the decree. A bill of review may also, by special leave, be allowed for new proof that has come to light after the decree, which could not possibly have been used at the time when it passed. It is said, that this rule has never been departed from.' (See authorities there cited.) And that 'the Act of 1840, which directed the court to give such relief as equity and justice may require, may be understood as adopting the principles of equity which had heretofore governed Courts of Chancery in applications of this kind.' And to allow this to a party who cannot allege that any error in law appears on the face of the decree; or that he has discovered any new evidence, or that any new matter has arisen, would be contrary to the maxim that 'no one shall be twice vexed for the same cause,' and would not be administering justice or equity.

" In applying the rules of chancery and equity practice thus laid down to this case, we find the first rule inapplicable, as there is no error in law alleged in the petition, or appearing in the body of the decree. Neither can the relief prayed be afforded under the second rule, because no new matter is alleged to

have arisen after the decree. These two are the only rules under which a party may claim to have a bill of review as a matter of right.

"A bill of review may also, by special leave, be allowed for new proof that has come to light after the decree, and which could not possibly have been used at the time when it passed. But this is matter of grace, not of right: *Barb. Eq. Pr.* 90; *Coop. Eq.* 89; *Story's Eq.* 404; and therefore addresses itself to the sound discretion of the court, and necessarily involves an inquiry into the whole case.

"On looking into the record, we find that the accountant does not charge herself with any personal property of the deceased; but claims a credit for the sum of $216.13½, for sundry payments made. The account was confirmed *nisi*, 24th March 1856, and on 25th of the same month exception was filed as follows: —'The accountant should have charged herself with a large amount of goods and chattels, moneys, and other personal estate which belonged to decedent, a large part of which she received.'

"An auditor was appointed the same day, to audit and adjust this account, and distribute the balance. The auditor, after having heard the parties, and taken a large mass of testimony, made his report, which was filed on the 6th of January 1857, and in which he finds a balance due the estate, after deducting the whole credit claimed by the administratrix in her account filed, of $1637.87½. To this account the administratrix excepted, on the ground that 'the auditor erred in charging her with the items on the debit side of the account, alleging that said articles were the property of accountant, and did not belong to Conrad Hartman in his lifetime, nor at the time of his decease. And 2d: That there were not so many articles as charged in the account restated, and the prices for the same were too high.' The exceptions were overruled by the auditor, were refiled in court, and, after argument, were overruled by the court, and the auditor's report confirmed.

"Neither party having asked for an issue to be tried by a jury, they mutually agreed that the facts involved in the account should be determined by the auditor. And the principal question before him was the ownership of the property which formed the debit side of the account. The administratrix claimed it as her own. It was in her possession, and had been since the death of Conrad Hartman; and the *onus* of proving it to be the property of his estate, was thrown upon the widow and heir, who had made that allegation as the basis of their exception to the account. The whole question of title to the property, both legal and equitable, was involved in the issue raised upon these allegations of ownership by the respective parties. The auditor was satisfied, from

[Hartman's Appeal.]

the whole evidence, that the title to this property was in Conrad Hartman in his lifetime, and at his decease. The court being of the same opinion, confirmed the report, so that the question of title to the property is no longer open.

"The question of fact now presented to the court is, 'whether any new proof has come to light since the decree, which could not possibly have been used at the time the decree passed.'

"What are the facts in the record? Conrad Hartman died in November 1853; letters of administration were granted to the petitioner, Mary Hartman. On the 30th of January 1856, she filed her account, returning no property of the estate, but claimed a balance of $216.12½ due her, as administratrix, for sundry payments. On the 25th of March 1856, exception was filed to this account; and, under that exception, the question of title to the property was raised, and upon that issue the accountant voluntarily staked all her right and title to the same, and introduced the very evidence (for which she now asks a credit) to establish her title to the property. The decision having been made against her title, and in favour of the estate, shall she now be permitted to turn round and recover from the estate, upon the same evidence which was submitted to the auditor, to establish her title to the property?

"We are clearly of opinion that her claim is barred in equity as well as in law; that the petition does not 'discover new proof since the decree;' and that the record shows that the same 'proof' was introduced without objection, and passed upon both before and at the time of the decree. The petition of Mary Hartman, for a bill of review, is therefore dismissed, at the costs of the petitioner."

From this decree the present appeal was taken.

*Hepburn*, for the appellant.

*Woods* and *Loomis*, for the appellees.

The opinion of the court was delivered by

STRONG, J.—The construction given by the court below to the Act of October 13th 1840, was entirely accordant with that which this court has given in numerous cases. It was first announced in Riddle's Estate, 7 *Harris* 433; and was repeated in Bishop's Appeal, 2 *Casey* 470. It was also recognised in Stevenson's Appeal, 8 *Casey* 318, and in Russell's Appeal, 10 *Casey* 258. The construction is now too firmly settled to be disturbed by us. A petition of review, therefore, must aver errors of law appearing in the body of the decree sought to be reviewed, or new matter

which hath arisen since the decree, or that new proof has been discovered, which could not possibly have been used at the time when the decree was made. Tried by this rule, the appellant's petition presents no sufficient reason for reforming the account. We have not the entire petition before us, but the abstract upon the paper-book exhibits no error of law appearing in the body of the former decree, no allegation of new matter which has since arisen, nor averment of new proof since discovered. On the contrary, the petitioner avers that the evidence which she now asks to submit as a basis for reforming the account, was in her hands and under her control at the time when her account was subjected to the revision of the auditor. Then she claimed that the omnibus line, with the value of which the auditor and the Orphans' Court charged her, was not the property of the decedent, Conrad Hartman, but her own. This was the issue which she submitted to the auditor, and upon that she staked her case. It was found against her, and the decision was confirmed by the Orphans' Court, after exceptions filed by her. If she laid before the auditor the receipts and vouchers which she now claims should have been credited to her, it was to establish the ownership of the property. If she did not lay them before him, it was because she admitted them not to be proper charges against the decedent's estate. She asks now to be allowed a credit for the same payments, " as having been made on account of Conrad Hartman, if it be conceded that he was the owner of the omnibus line," with the value of which she was charged. But that he was such owner she does not concede. She has always contested it. How can this be said to be a specific averment of any error in the former decree ? It is not positively asserted that there was any error. Indeed, from the tenor of the whole petition, so far as we can gather it from the abstract, the error, if any, is supposed to consist, not in the failure to allow credit for the petitioner's receipts and vouchers, but in charging her with the value of the personal property. In regard to this, however, it is shown that the ownership of the omnibus line was established on trial to have been in Conrad Hartman. No issue denying such ownership was demanded to be sent to a jury, it is true; but it was submitted to the auditor and adjudicated by him. That question of fact was, therefore, settled against the petitioner. If, then, a review of the account were granted, it could not avail her. It would still be the duty of the Orphans' Court to charge her with the value of that property; in other words, to reaffirm the decree already made. Surely the Act of 1840 does not require that a review be granted, when the petition shows that the original decree was right, and that the review must terminate where it begins—must leave the account as already settled. Even where the petitioner

[Hartman's Appeal.]

asks a review for new proof, discovered after the decree, proof which could not possibly have been used at the time when the decree was made, a review is granted as a matter of grace, not of right: *Story's Eq.* 404; *Barb. Eq. Prac.* 90. But here the appellant shows that she had all the receipts and vouchers in her hands when her account was settled. If an accountant may retain vouchers for credit, without claiming or showing them until after his account has been settled, and confirmation thereon decreed, and then produce them as grounds for a review, it will require many more years to close a trust than has generally been supposed necessary. There is no equity in such a petitioner's case.

The decree of the Orphans' Court is affirmed with costs.