## Milligan's Appeal. Agnew's Estate.

1. In partition of real estate in which a minor has an interest, a guardian who has no funds of the minor is not bound to take real estate charged with an owelty equal to the value of the purpart, even though it be to the minor's advantage that he should do so.

2. In proceedings in partition, A., a minor, and her guardian's wife had equal interests, the minor, as representing an older child, having the first right to accept or refuse to take real estate. A purpart was allotted to the wife at what was then a fair valuation, and the minor's share was charged upon this purpart as owelty. The guardian at that time had no funds to pay the owelty. There was no pretence of fraud in the proceedings. The real estate allotted to the wife increased very greatly in value: *Held*, that this fact did not in any way impair the wife's title to the real estate.

3. The guardian in settling his account charged himself with the amount of this owelty, with interest, and his account was confirmed: *Held*, that the proceedings in partition could not be inquired into in a proceeding for a review of the guardian's account.

4. The record in the partition did not show in express terms that the guardian declined to take real estate for his ward, but it did show notice to the parties to appear and accept or refuse, that the minor did appear by her guardian, that all the shares were allotted to other heirs, and that the minor's share was charged as owelty: *Held*, that this was enough to show that the guardian declined to take real estate; and that there was no evidence to impair the title of the guardian's wife to the purpart allotted to her.

5. Where a guardian, who stood *in loco parentis* to his ward, improperly charged her with her support and education, but the account was fully explained to her two years after her majority, and all the facts fully known to her at that time; the minor took a note for the balance due her, on which she received partial payments during several years; the account was duly confirmed by the Orphans' Court, and the petition for a review did not allege any new evidence to impugn the account: *Held*, that there was no evidence to support a petition for a review.

6. In the absence of positive evidence that valuable bank stocks bought by a guardian while he had funds of his ward uninvested in his hands were bought with his ward's money, the minor, after attaining her majority, is not entitled to elect to take the stocks, instead of money.

7. Where a guardian, from 1850 to 1857, received $2746 of his ward's money in small amounts which he mixed with his own money and never invested in her name, and in 1856 and 1857 invested $1900 in valuable bank stocks, he himself being at that time a man of means and his wife having money of her own, and there was no further evidence to trace the ward's money into these stocks: *Held*, that the finding of an auditor that the ward's money did not go into these stocks was not unwarranted by the facts in the case, and that the minor could not elect to take the stocks instead of money.

October 9th 1876.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.    WILLIAMS, J., absent.

[Milligan's Appeal.]

Appeal from a decree of the Orphans' Court of *Allegheny county :* Of October and November Term 1875, No. 277.

These were proceedings begun in the court below by Mary E. Milligan (formerly Agnew) and her husband, for a review of the account of Dr. James Carothers, her former guardian.

The grounds upon which the review was asked were these : (1) Because the guardian, in the partition of certain real estate in which his ward and his wife were equally interested, had elected to take real estate for his wife (which afterwards proved to be very valuable) and had taken his ward's share of the estate in money ; (2) because, though standing *in loco parentis* to his ward, he had charged her in his account with the amount expended for her support and maintenance ; and (3) because he mingled his ward's money with his own in the purchase of bank stocks, which increased greatly in value and yielded more than six per cent. interest, and had accounted only for the principal of the minor's estate with legal interest. The original and supplemental petitions filed were referred to an auditor who reported substantially these facts.

The petitioner was the only child of Mary Agnew (formerly Graham) ; the latter died in 1843, and soon after her death the petitioner, then but a few weeks old, was taken to the home of her mother's younger sister, Mrs. Carothers, wife of Dr. Carothers, and lived there until some time after she had attained her majority and until she was married ; she was brought up by and treated by her aunt and her guardian in all respects as their own child. In 1846 James Graham, the grandfather of the petitioner, died intestate, seised of a farm in Allegheny county, in which Mary Agnew and Mrs. Carothers were each entitled to an eighth interest. Proceedings for the partition of this real estate were begun in 1849 (Dr. Carothers having in the meantime been appointed guardian of the petitioner), and the inquest made a return dividing the estate into four purparts, of which the lowest in value was appraised at $3538. Mary Agnew's interest was valued at $2169. Dr. Carothers and his wife elected to take a purpart valued at $4500, and one was accordingly set apart to them, in October 1849, charged with the payment of $2169 owelty of partition to Mary Agnew as her entire share of the estate. Up to this time no money or property of the ward had come into the hands of her guardian. The purpart set apart to Mrs. Carothers turned out to be coal lands, and became very valuable. There was no evidence that the partition was not fairly conducted. The record of the proceedings in partition did not show in express terms that the guardian declined to take for his ward ; it did however show notice to the parties interested to appear on a certain day and accept or refuse the real estate at the valuation ; that the guardian was present on that day, that all the shares were allotted to other heirs, and that the petitioner's share was ordered to be paid in money.

The petitioner reached her majority in July 1864. The account of her guardian was filed in September 1866; in it the accountant charged himself, among other things, with $2169 and simple interest thereon, and claimed credit for over $3000, paid for the minor's support and education during her entire minority. This account was fully explained to the minor before it was filed, so that she understood clearly that it charged her for her support and education. There was some evidence that her relations to her aunt and guardian made it impolitic for her to object to the account as stated, but there was nothing to show that any improper influence was used in any way. The petitioner took a note for the balance due her, and signed a receipt therefor. Payments were made to her on this note at various times as late as 1870. Dr. Carothers died in April 1867. Mary Agnew was married some months later. At the filing of the first petition the purpart allotted to Mrs. Carothers was still in her possession.

With regard to the third ground for a review, the evidence showed that Dr. Carothers never kept a bank account, except for a short time before 1860, and that he kept no separate account of his ward's money. The owelty charged in the partition was never paid in money, but remained a charge upon Mrs. Carothers's share until the settlement of the account, and was then included in the note given to the petitioner. From January 1st 1850 to January 1st 1857, the guardian received other money of the minor to the amount of $2746. In May 1856, Dr. Carothers, having then in hand $1750 of the trust money, invested $900 in bank stock in his own name, and in June 1857, having in hand $2746 of the trust funds, he invested $1000 in bank stocks in his own name. It appeared, however, that at this time he was the owner of valuable real estate, and was a physician in active practice, and further, that both he and his wife had money of their own sufficient in amount to make these investments. He did not appear ever to have invested any of the trust funds in his ward's name. Beyond the above facts there was no evidence given to trace the minor's money into these investments. The auditor was of opinion that there was no evidence to show that any of the minor's money had been used in the purchase of the stocks claimed by the petitioners.

The first petition for a review was filed in December 1867. It set forth the proceedings in partition; that the petitioner was entitled to choose or refuse a purpart before Mrs. Carothers, being the only child of an older sister; and that the guardian, in electing to take a purpart for his wife, had committed a fraud upon his ward, and prayed a review of the account on this ground. A supplemental petition, filed in 1868, set forth that Dr. Carothers had been legally disqualified to act for his ward in the proceedings in partition, and therefore she had not been in fact represented; further, that Dr. Carothers had elected to take a purpart for his wife, though the first choice was in his ward, without having first refused

[Milligan's Appeal.]

a purpart for the latter of record, all of which was a fraud upon the ward, and prayed that the petitioner, not having been represented in the partition, should be allowed to come into court and make choice of or refuse the purpart taken by Mrs. Carothers at its valuation. Neither of these petitions prayed to surcharge the accountant on the ground that his choice of a purpart enured to his ward. A third petition, filed the same day, was based upon the charges for support and maintenance of the ward; and a fourth petition, filed April 1871, prayed a transfer of the above-mentioned stocks and an account of the dividends received from them.

Upon these facts, the auditor was of opinion that the petitioners were not entitled to a review; the court below confirmed the report, and the petitioners took this appeal.

*Hampton & Dalzell*, for the appellants.—The guardian, in the partition, became personally liable for the owelty, and to that extent became the real owner of the purpart allotted to his wife. He also took a life estate under his wife: Kean *v.* Ridgway, 16 S. & R. 63; Snevily *v.* Wagner, 8 Barr 396. He therefore acted for himself and not for his ward, and his account should be surcharged: Hughes's Appeal, 6 Casey 471; Keech *v.* Sandford, 1 Lead. Cas. in Eq. 48; Galbraith *v.* Elder, 8 Watts 93. Dr. Carothers was disabled from acting for his ward; therefore she has never had a day in court; her title has not been divested: Richards *v.* Rote, 18 P. F. Smith 248. The auditor found that the guardian stood *in loco parentis* to his ward; he cannot charge for her support: Lantz *v.* Fry, 7 Harris 366. It was admitted that the guardian mixed the minor's funds with his own, and did not invest them in her name. It was his duty to mark her property so that it could be distinguished, and as he did not do so, she may elect to take any investments that could have been bought with her money: Hart *v.* Ten Eyck, 2 Johns. Ch. 103; Lupton *v.* White, 15 Vesey 439; Lord Chedworth *v.* Edwards, 8 Id. 48; Fellows *v.* Owen, 2 Id. 516; Pennell *v.* Deffell, 23 E. L. & E. 460; Lukenss' Appeal, 7 W. & S. 48; Morris *v.* Wallace, 3 Barr 319; Stanley's Appeal, 8 Id. 432; Royer's Appeal, 1 Jones 36; Norris's Appeal, 21 P. F. Smith 106.

The petitioner was not estopped by her receipt to her guardian; for when she gave it she did not have a perfect knowledge of her affairs: Wills's Appeal, 10 Harris 332; Elliot *v.* Elliot, 5 Binn. 8; Eberts *v.* Eberts, 5 P. F. Smith 119; Kinter's Appeal, 12 Id. 318; Stanley's Appeal, *supra.* Receiving payments on the note did not raise an estoppel; she was entitled to receive the amount of the note at least: Wills's Appeal, *supra.*

In cases of private settlement with a minor just come of age, and of merely formal settlements in court, liberality ought to be exercised in allowing a review: Kinter's Appeal, *supra.* A bill for review is the proper remedy to surcharge the fraudulent omission of assets received: McNeel's Estate, 18 P. F. Smith 412. The

[Milligan's Appeal.]

omission to charge himself with the value of the land which he took as his ward's trustee was a fraud on her, and so averred in the petition. The charge for maintenance was an error in law which is reviewable. The question of the bank stock arose upon after-discovered evidence. Finally, the case is within Kinter's Appeal, *supra;* Russell's Appeal, 10 Casey 258, and Whelen's Appeal, 20 P. F. Smith 425.

*Slagle & Wiley,* for the appellee.—If the proceedings in partition were void as to Mrs. Carothers they were void *in toto.* Mrs. Carothers's title cannot be impaired in these proceedings, as she is not in court: Herr *v.* Herr, 5 Barr 428; Snevily *v.* Wagner, 8 Id. 396. Even if there had been fraud it can only be shown in direct proceedings against her: Dundas's Appeal, 14 P. F. Smith 331. Besides, there was no prayer for a surcharge in the petitions. There was no evidence of fraud; and the burden of showing fraud was on the petitioner: Yeager's Appeal, 10 Casey 176. The increase in value of the purpart is not proof of fraud: Bowman's Appeal, 3 Watts 369. The decree of the court in the partition raises a presumption that every requisite was complied with: Neeld's Estate, 20 P. F. Smith 113. Dr. Carothers had no funds to pay owelty with and was not bound to advance money: Chorpenning's Appeal, 8 Casey 316. Again, even if the guardian had committed a fraud, his wife's title would not be impaired: Totten's Appeal, 10 Wright 303; Armstrong's Appeal, 18 P. F. Smith 411. There was evidence to show that the guardian always kept an account of his ward's maintenance and intended to charge her with it. Norris's Appeal, *supra,* has the qualification, that the trust money can fairly be traced into the investment. We are not obliged *in these proceedings* to show that her money did not go into the stocks: Yeager's Appeal, *supra;* this would be hard to do, after many years and when the accountant is dead. In *this* court the only question is whether the petitioner is entitled to a review of *right;* that can only be for errors in law on the record, and for after-discovered evidence: Kinter's Appeal, *supra;* neither ground exists here.

Mr. Justice MERCUR delivered the opinion of the court, January 2d 1877.

This was an application for the review of a guardianship account duly confirmed by the Orphans' Court.

In September 1866 Dr. James Carothers filed his account as guardian of Mary E. Agnew (now Milligan), the appellant. At the next December Term it was duly confirmed. In April of the next year, Dr. Carothers died. Some three months thereafter the appellant married. On the 28th of December following, the appellant presented her first petition, asking for a review of the account. She followed this with three supplemental petitions, the last in April 1871.

[Milligan's Appeal.]

The substantial grounds of complaint and prayers for relief may be considered in three parts :—

1. The omission of the guardian to elect to take for the appellant a purpart of the real estate, at the time of the partition thereof, and therefore she asked to be allowed to come into court and make choice of or refuse said purpart at its valuation.

2. That the guardian had improperly charged for her support, maintenance and education, and that all those items should be stricken from the account.

3. That the guardian mingled his ward's money with his own in the purchase of bank stocks, and that the appellant is entitled to receive said stocks and their dividends, and not simply the money used in their purchase.

We will consider them in the order stated :—

1. The whole land partitioned was valued by the inquest at $17,352.15. The appellant and the wife of Dr. Carothers were each entitled to one-eighth interest therein. It was divided into four purparts. The least valuable was valued at $3538. The appellant's share was of the value of $2169 only. The guardian had no funds of the appellant with which he could pay owelty. If he had elected to take a purpart for her, he would have been obliged to advance, of his own money, a sum nearly equal to the whole value of the appellant's share. This he was certainly not required to do. Had he done so, he would have incurred the risk of having the legality of his act questioned by his ward on her arriving at full age. He therefore took no purpart for the appellant. He did, however, in right of his wife elect to take a purpart valued at over $4500. This he had a perfect right to do. The rights of his wife were not to suffer from the fact that her husband was guardian of the appellant. The wife was not thereby compelled to decline taking a purpart, nor was she obliged to take jointly with the appellant or any other heir. There is no averment that the partition was not honestly and fairly made, nor that any purpart was appraised at less than its then market value. The partition was confirmed and the allotment made to Mrs. Carothers in October 1849. The court then ordered her and her husband to pay to his said ward the said sum of $2169, with interest from that date. He was charged with this sum in his final account, which was duly confirmed. A title thus acquired by Mrs. Carothers, in the absence of any fraud, cannot be divested or impaired by the discovery, several years afterwards, that the surface of the land was underlaid with coal.

It is further urged, that inasmuch as the record does not aver in express terms, that the guardian declined to take for his ward, it still remains open as to her, and she may now come in and elect.

The record, however, does show notice to "the heirs and others interested in the estate" to be and appear on a day named, and accept or refuse to accept the real estate at the valuation, or show

cause why the same should not be sold. It shows that on the day designated the heirs and representatives appeared, the appellant was there by her guardian. All the purparts were allotted. It shows that all of them were allotted to other heirs, and the share of the appellant was ordered to be paid in money. It does, therefore, substantially and sufficiently appear that the guardian declined to take any purpart for his said ward. There is no evidence in the case to impair the title acquired by Mrs. Carothers, or calculated to show any bad faith or fraudulent conduct of the guardian in the whole transaction.

2. If the question of the charges for the support, maintenance and education of the ward was now open, there is great force in the objection to their allowance. But the question is not now an open one. All the items complained of were distinctly and specifically set forth in the account filed, and it was duly confirmed by the Orphans' Court. This is a petition for a review of that account. It is well settled that an account thus settled and confirmed can only be reviewed as a matter of *right*, for error of law apparent on the face of the record, or for new matter which has arisen since the decree. As a matter of *grace* a review may be granted for new proof, discovered after the decree, which proof could not possibly have been used at the time when the decree was made: Story's Eq., § 404; Riddle's Estate, 7 Harris 431; Russell's Administrator's Appeal, 10 Casey 258; Hartman's Appeal, 12 Id. 70.

In the case we are now considering it is not claimed that any error of law appears on the face of the record, nor is it shown that new matter has arisen since the decree, or that all the proof now offered to invalidate the decree was not known and accessible to the appellant when it was made.

The answer to the petition, *inter alia*, avers:—

1. That the accounts containing all these credits were well known to said ward, having been examined before and after she attained her majority, and she made no objection thereto.

2. No objection was made to these credits in her first petition, nor has she specified in her supplemental petition her ignorance that the guardian claimed such credits.

3. She does not aver that they are not correct in amount, nor that they were not duly and properly expended in the maintenance and education of said ward.

The master, to whom the case was referred to ascertain the facts and give his conclusions, reported, showing that when the guardian's account was made, the appellant was more than twenty-three years of age; that she was present when the items were "discussed and considered during several evenings; that she was aware of the fact that a charge for boarding and clothing would probably be made, and the only question, if made, was as to how much the charge would be." She was advised that it was a final settlement between

[Milligan's Appeal.]

herself and her guardian. When the account was fully prepared it was presented to her. He therefore found, "that the facts relied upon by petitioner for a review of the account were fully known at the time of the filing of the account, and not within that class of cases allowing a review for new matter discovered after the decree."

It will be observed that the effort is not to surcharge the guardian with money or property withheld or omitted from his final account, but to strike therefrom certain credits distinctly claimed, stated in the account, and confirmed by the court. The evidence was wholly insufficient for that purpose. All the facts on which the appellant relies to attack the decree were as well known to her when the account was filed, as when she petitioned for the review. She received payments to apply on the account after its confirmation, and made no application for a review until after the death of her guardian.

3. The allegation that the guardian purchased stocks with his ward's money is not sustained by the evidence. The master states the law correctly. He says : "If the proofs establish the fact that these stocks were purchased with the money of the ward she would certainly be entitled to make her election to take them in lieu of money," but he adds, " the evidence fails to show that any of her money was used for that purpose." An examination of the testimony does not show his finding to be unwarranted. He therefore concluded, "that under the law such a case had not been presented as entitles the party to a rehearing of the account." Exceptions having been filed to the report, they were dismissed, and the report confirmed finally by the court. We see no sufficient cause for disturbing the decree.

Therefore, decree affirmed and appeal dismissed at the costs of the appellant.