# Finley's Estate.

*Orphans' court practice—Bill of review.*

Where a bill of review does not set forth any of the grounds for review stated in the act of October 13, 1840, but charges that the settlement of the accounts and the decrees thereon were obtained by fraud and imposition, and it appears that the bill was not filed until seventeen years after the first, and three years after the second account had been confirmed, very strong and satisfactory reasons must be shown to move the court to disturb the decrees, and the fraud alleged will not be presumed, but must be proved.

Where petitioners for a bill of review knew or by due diligence could easily have known before the accounts were confirmed of every item which they allege was illegally omitted from the accounts, and also knew of the filing and auditing of the accounts, and the items are self explanatory and show on their face no concealment and there is no error of law in the record or after discovered evidence, the petition will not be granted, although there are averments that the accountants took charge of all the estate without consultation with the parties in interest, and assured the parties that the accounts were correct, and such assurances were relied upon by the parties without taking the advice of counsel.

*Orphans' court practice—Bill of review—Demurrer—Answer.*

Where a demurrer and answer were filed to a petition for a bill of review, and by leave of court the answer was subsequently withdrawn, except so much thereof as demurred to the petition, the demurrer may be treated as having been filed with leave of court after the answer had been withdrawn. There was no error therefore in hearing the case on the petition and demurrer.

MITCHELL, J. dissented.

Argued March 26, 1900. Appeal, No. 430, Jan. T., 1899, by Elizabeth Vandyke et al., from decree of O. C. Phila. Co., Jan. T., 1882, No. 231, sustaining demurrer to petition for review in the estate of Thomas Finley, deceased. Before GREEN, C. J., McCOLLUM, MITCHELL, BROWN and MESTREZAT, JJ. Affirmed.

Demurrer to petition for bill of review.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* were (1, 2) in hearing and considering the demurrer; (3) in sustaining the demurrer.

*Richard P. White*, with him *Thomas Earle White*, for appellants.—The demurrer was overruled by the answer: Barbey's App., 119 Pa. 413; 1 Daniel Chan. Pr. *660; Mitford Eq. Pl. *209; Story's Eq. Pl. sec. 442.

The demurrer being overruled by the answer, the court below could not reinstate it.

The learned court below erred in the application of the rule that when an account is settled and confirmed it can only be reviewed as a matter of right for error of law apparent on the face of the record, or for new matter which has arisen since the decree: Story's Eq. Pl. sec. 407; Mitchell v. Kintzer, 5 Pa. 216; McNeel's Est., 68 Pa. 412.

The petition shows such frauds by the executors as to warrant a rehearing: Story's Eq. Pl. sec. 251; Johnson v. Bliss, 11 W. N. C. 293; Oeslager v. Fisher, 2 Pa. 467; Reed v. Mellor, 122 Pa. 635; 2 Lewin on Trusts, *504; Wykoff v. Wykoff, 3 W. & S. 481; Martin's App., 23 Pa. 433; Datesman's App., 127 Pa. 348; Whelen's App., 70 Pa. 410; Kuhns's App., 87 Pa. 100; Montgomery Web Co. v. Dienelt, 133 Pa. 585.

The petitioners are not barred by the limitation of the act of 1840 or by laches: Kuhns's App., 87 Pa. 100; Bispham's Eq. sec. 203.

*James Aylward Develin* and *John G. Johnson*, for appellees, cited Cramp's App., 81 Pa. 90, Lehr's App., 98 Pa. 25, Scott's App., 112 Pa. 427, Stewart's Est., 15 Pa. C. C. 383, Priestley's App., 127 Pa. 432, Adam's Est., 183 Pa. 134, Thomas's Est., 184 Pa. 640, Scott's App., 112 Pa. 427, and Milligan's App., 82 Pa. 395.

OPINION BY MR. JUSTICE MESTREZAT, May 21, 1900:

The court below has rightly disposed of this case, and the reasons assigned and authorities cited in the opinion of the learned judge sustaining the demurrer clearly vindicate the correctness of his conclusions.

This was a petition for the review of the two accounts filed by the executors of Thomas Finley, deceased. The decedent died October 24, 1879. The first account was filed in March, 1882, and was adjudicated and confirmed in April, 1882. It appears from the adjudication that this account was duly

vouched. At the audit of the account Mrs. Barron appeared by counsel and, although it is denied in the petition, the adjudication which is made part of the petition, shows that Elizabeth Vandyke, J. F. Moffett, Charles W. Finley and William E. Finley appeared in person. The second account was filed by the executors in March, 1896, and was adjudicated and confirmed in April, 1896. It appears from the adjudication that the various items of the account were properly vouched in the presence of counsel. At the time of the audit of the account, all the interested parties were of age and the auditing judge finds that "the several parties in interest, by writing attached to the account or through their counsel, admitted its correctness and requested its confirmation." On October 14, 1897, a citation was issued to the parties in interest to show cause why the security to be entered by the life tenant should not be fixed in the sum named in said citation. Service of this citation was duly made and answers thereto were filed by Isabella F. Moffett and W. H. Barron, guardian of the children of Mrs. Katharine Barron, deceased. A decree was made by the court, March 5, 1898, fixing the amount of the security to be given by the life tenant at the sum of $2,421.60, and it was ordered that the balance for distribution under the adjudication of the second account should be paid to Mrs. Elizabeth Finley, the life tenant, on her entering security in said sum. The second account seems to have been treated by the parties as a final account, but the decree thereon awarding to the life tenant the balance in the hands of the executors provided that it should not affect the rights of the interested parties against the executors for the alleged loss of the interest in the schooner "R. S. Graham."

No objection was made to the adjudication of either account until the petition for review was filed April 24, 1899, by the appellants who represent four of the seven interests in the estate. This was seventeen years after the first and three years after the second account had been confirmed. After this lapse of time, very strong and satisfactory reasons should be shown to move the court to disturb decrees confirming adjudications entered under the facts in this case. It is clear, as shown by the court below, that the appellants, under the facts disclosed in their petition, are not entitled to have these ac-

counts reviewed for error of law apparent on the record, or for new matter arising since the decree, or for new proof discovered after the decree and which could not possibly have been used when the decree was made. These are the grounds on which a review of an account can be had under the act of October 13, 1840. While this is conceded, yet it is contended that the appellants are entitled to a review because the settlement of the accounts and the decrees thereon were obtained by fraud and imposition. In such case, it is claimed, the rule that accounts can only be reviewed for error of law and discovery of new matter has no application.

It is true that fraud vitiates everything it touches and its beneficiary can find no protection or assistance in a court of justice. Yet it is equally well settled that fraud will not be presumed but must be alleged as well as proved. The allegations in the petition presented by the appellants, even if true, and we must so regard them on this demurrer, do not establish fraud on the part of the accountants. The errors alleged and sought to be corrected in the accounts are mistakes in debits and credits, and the failure to account for assets of the estate. It is averred in the petition that the executors claimed and were allowed credits for moneys which should have been paid by the life tenant, for a large sum expended illegally in the erection of the new Crescentville mill and for moneys received as income and paid to the widow. It is further averred that the accountants neglected to charge themselves with certain loans and ground rent they had received and with profits received in running the schooner "R. S. Graham," and that the estate suffered a loss in the management of said schooner. But in these averments where does fraud appear? There was no attempt on the part of the executors to conceal the fact that they claimed the credits stated in their accounts and such attempt would necessarily have been ineffectual had it been made. Nor did the executors mislead or could they have deceived the apellants as to the loans alleged to have been illegally omitted from the accounts. Credits for the alleged repayment of the loans as well as the failure of the executors to charge themselves with said loans were shown by the accounts and hence the appellants knew or should have known the fact. Their supine negligence alone could have prevented them from

knowing what was thus clearly disclosed. As to the ground rent, the effect of its omission from the account need not be discussed. The appellees through their counsel agree, upon a citation to file a supplemental account embracing it and then the right to the fund may be determined.

So far, therefore, as the items included in or omitted from the accounts are concerned there is no ground whatever on which to base a claim of fraud. They were known or should have been known to the appellants and there is nothing disclosed in the petition from which an inference of fraud on the part of the accountants may properly be drawn. As to the schooner "R. S. Graham," the appellants knew that the testator's interest in it was held by the executors as an asset of the estate when the first account was filed in 1882 and the adjudication of this account disclosed to the appellants the further fact that the auditing judge suggested that the vessel should be sold and the proceeds brought into a future account. There could have been no concealment or fraudulent conduct in regard to the schooner or ignorance on the part of the appellants as to what the executors were doing with it. The appellants knew from the second account that it had not been sold, that the accountants were still retaining it as an asset of the estate, and that they had not charged themselves with its earnings since the filing of the first account. With this information in their possession, it is idle for the appellants to allege that they were deceived, or ignorant as to the action of the executors in regard to the schooner or its earnings and that they were thereby denied an opportunity of having the executors account for the same in the second account.

As additional evidences of fraud, the petition avers that one of the executors took charge of all the estate and property of the testator and managed it without consulting the heirs, and that the apellants had the fullest confidence in the executors that they would act for the best interests of the estate. It is also claimed that the appellants had no counsel to advise them and that they could not understand the condition of the estate and how it should be administered without the advice of counsel. It is further alleged that the executors assured the appellants that the account was correct, and that the heirs, relying on such assurances, did not employ counsel to investi-

gate it.   We fail to see that these acts on the part of the executors were in any way fraudulent.   It would have been most singular if the executors had not assured the appellants that the account was correct.   They had sworn to their account and they still insist that it is correct.   The assertion therefore that the account was correct has not even a tinge of fraud. The failure of the appellants to employ counsel to advise them was their own affair, and if they suffered thereby the consequences are attributable to themselves and not to the appellees.

In the petition it is said " that the items of the account were not explained to them (the appellants) and they did not know what they were for."   Both accounts contradict the latter averment.   Nearly every item is self-explanatory and the layman without the assistance of an attorney can easily understand both the debit and credit sides of the account.   This, taken in connection with the fact that both accounts were duly vouched at the audit, and that all parties in interest admitted the correctness of the second account, is amply sufficient to warrant the conclusion that the appellants fully understood both accounts and their contents and that no fraud or deception was practiced upon them by the appellees.

The counsel for the appellants contend that McNeel's Estate, 68 Pa. 412, sustains their position that the omission by the accountants to charge themselves with all the assets of the estate was a fraud.   But they entirely overlook the difference between the facts of that case and the one in hand.   The learned justice who delivered the opinion of the court in that case rested his decision on the ground that the petition and answer disclosed the concealment of material facts by the administrator which prevented the petitioners from excepting to his account and from surcharging him with certain securities omitted from the inventory and the account.   This was held to be a fraud or its equivalent.   But here, as we have seen, the petitioners knew or by due diligence could easily have known before the accounts were confirmed of every item which they now allege was illegally omitted from the accounts and also knew of the filing and auditing of the accounts.   The facts set out in the petition do not support an allegation that the accountants withheld or concealed said items from the knowledge of the petitioners.   The appellants admitted the second

account to be correct and requested its confirmation and nearly two years after it was audited, permitted without objection a decree to be made awarding the balance in the hands of the accountants to the life tenant. Under such circumstances, the failure to include an item in the debit side of an account is not in itself sufficient to convict an accountant of fraud.

In Kuhns's Appeal, 87 Pa. 100, referred to by appellants, the accountant was a guardian and the ward who asked to have the account reviewed was ignorant of the value of her father's estate and of her interest therein, and was assured by her guardian that he had charged himself with all he had received from her father's estate. Relying on this assurance of her guardian, she made no investigation, and signed a release when the balance shown by the account was ·paid her. As said by Mr. Justice TRUNKEY in his opinion, " The foulness was not on paper, it was in the assurances and concealments of him who was bound to disclose everything to his ward which she ought to know. " The difference between this case and the one at bar is quite apparent. Here the items alleged to have been improperly omitted from the accounts were not only not concealed from the petitioners but must have been fully known to them, at least prior to the confirmation of the second account.

We, therefore, think that the facts as set forth in the petition, if taken to be true, do not show fraud on the part of the accountants, and hence the petitioners are not entitled to relief on that ground.

The appellees filed both a demurrer and answer to the petition of the appellants. By leave of court the answer was withdrawn and the case was heard on the petition and demurrer thereto. We see no error in the action of the court in permitting the withdrawal of the appellees' answer and the substitution of the demurrer. By the record it appears that the answer was filed but subsequently withdrawn, except so much thereof as demurred to the petition. The demurrer, therefore, may be treated as having been filed with leave of court after the answer had been withdrawn. If both had been before the court at the same time, of course, the demurrer must fall. They could not stand together. Such, however, is not this case.

The assignments of error are overruled and the decree of the court below is affirmed.

MITCHELL, J., dissents, being of opinion that a clear case of fraud is presented, the account being a mere travesty, and appellant's acquiescence in it procured by representations falsely made by accountants.