## Barr's Estate.

*Practice, O. C.—Auditing judge—Findings of fact.*

1. Where a question is one of fact depending for its decision upon oral testimony, the finding of the auditing judge of the orphans' court approved by the court in banc, if there is evidence which warranted it, will not be reversed on appeal, unless palpably erroneous.

*Practice, O. C.—Bill of review—Laches—Estoppel.*

2. A review of the account of an executor based upon the alleged fraud of the executor who was testator's attorney in inducing the testator to purchase stock in a corporation, is not demandable as matter of right; but the court will require very strong and satisfactory proof of

the alleged fraud, where it appears that the petition was not presented until nearly ten years after the purchase of the stock, nearly nine years after testator's death, and more than four years after the confirmation of the account.

3. A bill of review will not be granted on the ground of after discovered evidence where such evidence could have been produced at the audit if due diligence had been observed.

Argued April 25, 1910.  Appeal, No. 121, April T., 1910, by Edward A. Barr et al., from decree of O. C. Allegheny Co., Feb. T., 1905, No. 74, dismissing petition for bill of review in Estate of Alexander Barr, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.  Affirmed.

Petition to bill of review.  Before HAWKINS, P. J.
The facts appear by the opinion of the Superior Court.

*Error assigned* was decree dismissing the petition.

*M. H. Stevenson*, with him *Wm. C. Boyd*, for appellants.

*W. B. Rodgers*, with him *Robert B. Petty*, for appellee.

OPINION BY RICE, P. J., July 20, 1910:
This is an appeal from a decree dismissing the appellants' petition after hearing on petition, answer and evidence.  The petition was for a review of the account of the acting executor under the will of Alexander Barr, deceased, and its principal object was to charge the accountant with the amount paid by the testator for certain shares of preferred stock of a corporation in which the accountant and his brother were largely interested as holders of the common stock.  At this time the accountant was the decedent's attorney, and the purchase was made through his agency and was recommended by him.  The decedent was past eighty years of age at the time, his eyesight was much impaired, and he was otherwise feeble in body, but the evidence fails to show that his mental

faculties were in such impaired condition as to incapacitate him to understandingly engage in a transaction of this kind. The court found that he had business capacity, and it is to be noticed that he at the same time executed his will under which the appellants claim. The gist of their complaint, as set forth in their petition, seems to be that the corporation was in financial straits, that the decedent had no knowledge of its condition, except what he received from the accountant, and that "if said Barr consented to said investment, he was induced to do so by the representations of said Balph that the corporation was in a flourishing condition, which representations were untrue." These allegations as to the financial embarrassment of the corporation and as to misrepresentations made by the accountant were unequivocally denied in his answer. The dispute thus presented was one of fact, and therefore it is important to notice the court's finding that the business of the corporation (a storage company) proved so successful that additional storage space became necessary and thereupon $15,000 preferred stock was authorized for this purpose and Mr. Barr bought forty shares of the 100 shares actually issued; also, that "there was abundant promise of a successful issue of the business upon which the company had entered at the time the stock was bought." Upon the question of the accountant's good faith the learned judge says: "There is no doubt that the Balph brothers had faith in this issue. They had invested their own money on it and were willing to keep it there. If the venture should fail Mr. Barr would take precedence of them by their voluntary concession. In these circumstances it is impossible to see how Mr. Barr could have been misled. On the other hand, subsequent loss of business was not in any sense attributable to James Balph but the result of influences over which he had no control. Other storage companies were organized and patronage divided." There was sufficient evidence, if believed, to warrant these findings. The learned judge had before him the witnesses,

and their character and credibility were subjects for his consideration. Moreover, the exceptions to his findings were duly considered by the court in banc and were overruled. Where a question is one of fact, depending for its decision upon oral testimony, the finding of the auditing judge approved by the court in banc, if there is evidence which warranted it, will not be reversed on appeal, unless palpably erroneous. The very earnest and ingenious argument of appellants' counsel has not convinced us that the evidence did not warrant the above findings. They precluded a legal conclusion that the accountant, although the attorney of the decedent, was chargeable with the loss of the investment which he recommended. The principles, relating to gifts to attorneys by their clients and of contracts between attorneys and clients by which the former obtain a benefit, do not seem to us to rule the case, in the absence of satisfactory proof of actual fraud or bad faith in recommending the investment.

This transaction took place in December, 1899, and Alexander Barr died in the following August. In November, 1904, the accountant advertised the stock for sale, and it was struck off to one Winger for $150, who bought on behalf of the company. A certificate of stock was issued to Winger and he in turn transferred the stock to the company. Assuming that there was no fraud imputable to the accountant in the original transaction, we fail to see how his conduct as executor in disposing of the shares of stock was such as to make him chargeable beyond the amount that he actually received at the sale. And upon this subject we cannot do better than quote the finding and opinion of the learned judge. He says: "When he became executor he adopted the wise policy of postponing sale of the stock in expectation of a rise in value; but his hand was forced by the present petitioners, and the stock was sold at a sacrifice as he had warned them. All the parties interested were given personal notice of the proposed sale and those who were present were importuned to bid, but refused. The amount realized

at the sale was not the measure of the value of the stock. The bid was made to cover unpaid debts and administration expenses. The stock was not listed and was owned by some half dozen parties. And while it was bidden in by the company, there has been a standing offer to transfer it to the legatees on repayment of the amount bidden." There was sufficient evidence to warrant these findings, and they seem to us to be conclusive of the question of the accountant's liability by reason of his conduct as executor.

The petition was not presented until nearly ten years after the date of the purchase of the stock by the testator, nearly nine years after his death, the probate of his will and the issue of letters testamentary, and more than four years after the confirmation of the account. It is well settled, by a long line of decisions, that petitions for review in the orphans' court are governed by chancery rules as to bills of review, and that a review may be had as matter of right only for errors of law appearing on the face of the record or for new matter that has arisen since the confirmation, and ex. gratia for new evidence discovered after the confirmation that could not have been produced before: Green's Appeal, 59 Pa. 235; Milligan's Appeal, 82 Pa. 389, 395; Le Moyne's Appeal, 104 Pa. 321; Scott's Appeal, 112 Pa. 427; Priestley's Appeal, 127 Pa. 420, 432; Bailey's Est., 208 Pa. 594; Dox's Est., 227 Pa. 606; Kachline's Est., 7 Pa. Superior Ct. 163; Bickford's Est., 16 Pa. Superior Ct. 572; Stetler's Est., 39 Pa. Superior Ct. 91. This is not a case where a review was demandable as matter of right, and the application being addressed to the sound discretion of the court, unreasonable delay, without excuse, was a circumstance which could not be ignored. After such lapse of time as we have alluded to, very strong and satisfactory reasons should be shown to move the court to disturb the decree: Finley's Est., 196 Pa. 140. The delay is a persuasive reason why a court exercising equity powers should move slowly and require full and satisfactory proof of the facts necessary to give the court jurisdiction: Priestley's Appeal,

127 Pa. 420; Kachline's Est., 7 Pa. Superior Ct. 163. Not only does the evidence fail to show clearly and satisfactorily that the accountant was chargeable with the amount paid by the testator for the stock, or that his conduct as executor debarred him from claiming as a credit the difference between its appraised value and the price realized at the sale, but the learned judge suggests that the evidence could, by the exercise of ordinary diligence, as readily have been obtained before as after confirmation of the account. A full consideration of the case leads us to the same conclusion. The testator's physical and mental condition, the accountant's relation to him, his part in the transaction, the financial condition of the corporation, the liens upon its real estate, the interest of the accountant and his brother as stockholders, the accountant's declarations after he became executor as to the unsalableness of the stock, were facts which could have been ascertained by the exercise of reasonable diligence. "The new proof must be proof which could not possibly have been used at the time when the decree was made:" STRONG, J., in Hartman's Appeal, 36 Pa. 70. "The new evidence subsequently discovered should be such as could not have been produced by the use of due diligence before:" SHARSWOOD, J., in Green's Appeal. Having regard to this principle, as well as to the merits, we are not convinced that the court erred in dismissing the petition. As was said in Scott's Appeal, and repeated in Priestley's Appeal, "Something is due to the finality of judicial proceedings."

The decree is affirmed at the costs of the appellants.