## Willing's Estate.

*Practice, O. C.—Bill of review—Laches—Income.*

1. An account settled and confirmed can only be reviewed as a matter of right for error of law apparent on the face of the record, or for new matter which has arisen since the decree.

2. As a matter of grace, a review may be granted for new proof discovered after the decree, which proof could not possibly have been used at the time when the decree was made.

3. If there be any laches or negligence on the part of him who seeks a review, it destroys the title to relief.

4. Annuities in francs were paid at the current rate of exchange instead of gold. At the audit of the trustees' account the Auditing Judge allowed the demand of the annuitants that their annuities then due be paid in gold francs, which was confirmed upon appeal. No demand, however, was made for the full payment of the annuities due in earlier years, although the account showed sufficient surplus income for such payment: *Held,* that the petitioners had had their day in court, were guilty of laches, and their petition for review should be dismissed.

Petition for review and answer. O. C. Phila. Co., Jan. T., 1897, No. 264.

*Hampton L. Carson, Joseph Carson* and *Shirley Carter* (of the Baltimore Bar), for petitioners.

*Saul, Ewing, Remick & Saul* and *John Hampton Barnes,* for respondents.

HENDERSON, J., May 28, 1926.—On Feb. 9, 1924, counsel for these petitioners, seeking review, wrote to the trustee demanding that the annuity due the latter part of that month be paid in gold francs and not in depreciated

francs. As the annuity was bequeathed in francs the trustee had been paying it at the current rate of exchange.

On March 26, 1924, the trustee filed an account so that this question could be raised. This account showed a balance of principal of $160,524.96, and of income $7745.79. It was called for audit before Judge Gest on April 9, 1924; the petitioners were represented thereat and demanded their annuities due Feb. 14, 1924, in gold francs, amounting each to $1930. No other demand was made. The Auditing Judge allowed the demand and was confirmed on appeal.

The schedule of distribution directed by the adjudication shows a balance of income to be awarded of $10,891.77, which, after paying the annuities due Feb. 24, 1924, left a balance of $7031.77.

The annuities due in earlier years had been paid in francs at the current rate of exchange, and surplus income constituted a fund out of which these annuitants could have claimed the full payment of earlier annuities. No demand therefor was made.

The petitioners allege that they have not had their day in court, in that the income account annexed to the second trustee's account was informally stated and did not show the details of the receipt and disbursement of income, and, hence, their request for a review so that these items might be shown at length.

The income account is informally stated and is worded as follows: "From 1923, Sep. 28th, to which date it was paid to those entitled and accounts rendered."

The first item of the income account reads as follows:

"1920, Sep. 28, To balance as per account rendered $4004.94.

And thereafter the schedule awarded, as above stated, $7031.77 surplus income to those entitled to the residuary income. It thus appears that these annuitants could have claimed this surplus income on account of the annuities which had been paid at the current rate of exchange instead of in gold. They have had their day in court and are not entitled to another.

A similar situation arose in Vogdes's Estate, 16 Dist. R. 377, wherein Judge Penrose said, page 380: "We think that so far as concerns the principal of the share which has become distributable by reason of the death of the granddaughter without issue or exercising her power of appointment, together with income accruing thereon since claim was made by them, the exceptants, the children of a granddaughter who had previously died, should be allowed to participate; but so far as concerns income distributed during a long course of years, under what was supposed to be the meaning of the will and under the advice of counsel, without objection or the assertion of any right on their part, they are estopped."

In Scott's Appeal, 112 Pa. 427, the Supreme Court, reversing the lower court, speaking by Mr. Justice Paxson, said:

"The excuse that they resided in Ireland and could not conveniently attend is of little weight, as it was entirely competent for them to have been represented by an agent or attorney. There may be some reason for granting indulgence to a party living abroad and who was in point of fact ignorant of the proceedings; but there is none where the parties had notice of what was going on and were, moreover, urged to look after their interests either in person or by counsel. Any laches or negligence destroys the title to relief: Cremer's Estate, 7 W. N. C. 544.

"It was conceded that the petitioners were not entitled to a review as a matter of right. Were they entitled to it as a matter of grace? The rule

was thus stated in Milligan's Appeal, 82 Pa. 395: 'It is well settled that an account thus settled and confirmed can only be reviewed as a matter of *right* for error of law apparent on the face of the record, or for new matter which has arisen since the decree. As a matter of *grace* a review may be granted for new proof discovered after the decree, which proof could not possibly have been used at the time when the decree was made.' Citing Story's Eq., § 404; Riddle's Estate, 19 Pa. 431; Russell's Admin'rs' Appeal, 34 Pa. 258; Hartman's Appeal, 36 Pa. 70."

In Wetherill's Estate, 8 W. N. C. 238, Judge Penrose said: "A review, therefore, is not a matter of right, and, if granted, it must be under the general powers which the court possesses, irrespective of the act of assembly. But in applications of this kind, whether for review strictly, after final decree, or for rehearing only, the rule is well settled that if there be any laches or negligence on the part of him who seeks it, it destroys the title to relief:' Story's Eq. Pl., par. 414, par. 421; Wiser *v.* Blachly, 2 Johns. Ch. R. 488; Young *v.* Keighly, 16 Vesey, 348. Here, as the record shows, the account was called for audit March 14, 1878, one of the parties now complaining attending in person, and being present during the proceedings. The adjudication was filed March 22, 1878. It stated that the commissions were allowed 'because no objection was made thereto.' Under the rule of court, not less than two weeks are given for exceptions or 'objections.' Yet, with the ground upon which the commissions were allowed thus distinctly set forth, none of the distributees saw fit to file an exception on this point."

The business of this court has grown so fast and assumed such large proportions that the judges are taxed to the uttermost, and, to use the language of Judge Penrose in Wetherill's Estate, *supra,* "it is manifest that the state of business is such that no relaxation of the principles governing applications for review is possible."

These petitioners have had their day in court, they are guilty of laches, and are estopped by their conduct and course of dealing.

The petition is dismissed.